UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

CASE NO. 6:23-CR-129-CEM/DCI
18 U.S.C. § 1349

v.

MELISSA JOY SPERTI

**INFORMATION**

The United States Attorney charges:

**COUNT ONE**
**(Conspiracy to Commit Health Care Fraud)**

**A.   Introduction**

At all times material to this Information:

The Conspirators and Their Enterprises

1.      Melissa Joy Sperti was a resident of the Middle District of Florida and owned and operated TrueAlliance Pros LLC ("TrueAlliance").

2.      TrueAlliance was a limited liability company located in Orange County, in the Middle District of Florida.

3.      Marketer 1, Marketer 2, and a third individual owned and operated a purported marketing company located in Seminole County, in the Middle District of Florida.

1

The Medicare Program

4.     The Medicare Program ("Medicare") was a federal health insurance program that provided medical benefits, items, and services to beneficiaries:

      a.     aged 65 and older,

      b.     under 65 with certain disabilities, and

      c.     of all ages with end-stage renal disease (permanent kidney failure requiring dialysis or a kidney transplant).

5.     The Centers for Medicare and Medicaid Services ("CMS") was an agency of the U.S. Department of Health and Human Services ("HHS") and was the federal government body responsible for the administration of Medicare.

6.     Medicare covered different types of benefits and was separated into different program parts.   Medicare Part B covered, among other things, medically necessary doctors' services, outpatient care, and certain medical equipment.

DME Claims Submitted under Medicare Part B

7.     Durable medical equipment ("DME") was reusable medical equipment such as orthotic devices, walkers, canes, or hospital beds.   Orthotic devices were a type of DME that included knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces").

8.     DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which

the providers agreed to comply with all Medicare-related laws, rules, and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number."   A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for medically necessary items and services rendered to beneficiaries.

9.     Medicare reimbursed DME providers and other health care providers for medically necessary items and services rendered to beneficiaries.   To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

10.     A Medicare claim for DME reimbursement was required to set forth, among other information, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

11.     Medicare would pay a claim for the provision of DME only if the equipment was medically necessary, ordered by a licensed provider, and actually provided to the beneficiary.   Medicare claims were required to be properly documented in accordance with Medicare rules and regulations.   Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes.

3

### B.  The Conspiracy

12.    From in or around March 2017, and continuing through in or around September 2019, in the Middle District of Florida, and elsewhere, the defendant,

MELISSA JOY SPERTI,

did knowingly and willfully combine, conspire, confederate, and agree with others, including Marketer 1 and Marketer 2, to commit health care fraud, in violation of 18 U.S.C. § 1347.

### C.  Purpose of the Conspiracy

13.    It was a purpose of the conspiracy for Melissa Joy Sperti, Marketer 1, Marketer 2, and others to unlawfully enrich themselves by, among other things: (a) soliciting, receiving, offering, and paying kickbacks and bribes in exchange for signed orders for braces; (b) concealing and causing the concealment of the receipt and payment of kickbacks and bribes; (c) submitting and causing the submission of false and fraudulent claims to Medicare for braces that were (i) medically unnecessary, (ii) ineligible for Medicare reimbursement, and (iii) procured through the payment of kickback and bribes; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### D.  Manner and Means

14.    The manner and means by which Melissa Joy Sperti and her coconspirators sought to accomplish the purposes of the conspiracy included, among others, the following:

4

a.     It was a part of the conspiracy that Melissa Joy Sperti did own and control TrueAlliance.

b.     It was further a part of the conspiracy that Melissa Joy Sperti would and did pay illegal kickbacks and bribes, including to Marketer 1 and Marketer 2, for signed orders for braces.

c.     It was further a part of the conspiracy that Melissa Joy Sperti would and did purchase access to the personally identifiable information ("PII") and purported personal health information of Medicare beneficiaries.

d.     It was further a part of the conspiracy that Melissa Joy Sperti and others would and did send and cause to be sent the Medicare beneficiaries' PII and purported personal health information to purported telemedicine companies.

e.     It was further a part of the conspiracy that Melissa Joy Sperti would and did pay and cause to be paid illegal kickbacks and bribes to purported telemedicine companies in exchange for arranging for medical providers to sign orders for braces without regard for the medical necessity of those braces.

f.     It was further a part of the conspiracy that in exchange for the referral of signed orders for braces, Melissa Joy Sperti would and did receive illegal kickbacks and bribes from conspirators at DME providers and marketers acting as intermediaries on behalf of DME providers.

g.     It was further a part of the conspiracy that Melissa Joy Sperti, Marketer 1, Marketer 2, and others would and did disguise the nature and source of

these kickbacks and bribes by entering into sham contracts that falsely identified the payments as for an hourly rate, when, in reality, the coconspirators paid a set amount per brace.

h.      It was further a part of the conspiracy that the coconspirators at DME providers would and did use these fraudulently obtained brace orders to support false and fraudulent claims to Medicare.

i.      It was further part of the conspiracy that from in or around March 2017, and continuing through in or around September 2019, Melissa Joy Sperti, through TrueAlliance, received approximately $733,741.68 in illegal kickbacks and bribes in exchange for brace orders sold directly and via other marketers to DME providers, which formed the basis of false and fraudulent claims submitted to, and reimbursed by, Medicare.

j.      It was further part of the conspiracy that during that same time period, Melissa Joy Sperti, through TrueAlliance, paid approximately $465,201.96 in kickbacks and bribes, including to Marketer 1 and Marketer 2, for Medicare beneficiaries' PII and PHI, doctors' orders, and doctors' signatures on doctors' orders.

All in violation of 18 U.S.C. § 1349.

6

## FORFEITURE

1.      The allegations contained in Count One are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7).

2.      Upon conviction of a federal health care fraud conspiracy, in violation of 18 U.S.C. § 1349, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense.

3.      The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of at least $708,834.67, which is the amount the defendant obtained as a result of the commission of the offense.

4.      If any of the property described above, as a result of any act or omission of the defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty,

7

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

ROGER B. HANDBERG
United States Attorney

for Michael Felicetta
Chief, Orlando Division
Assistant United States Attorney
U.S. Attorney's Office
Middle District of Florida

Glenn S. Leon
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

Catherine Wagner
Acting Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice

8